## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ROBERT JOHN LAMMI,
Petitioner,

v.

Case No. 17-11446
Hon. Terrence G. Berg

DUNCAN MACLAREN,
Respondent.

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

## I.     Introduction

This is a pro se habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner Robert John Lammi ("Petitioner"), currently confined at the Kinross Correctional Facility, was convicted of two counts of delivery of less than 50 grams of a controlled substance, MICH. COMP. LAWS § 333.7401(2)(a)(iv), following a jury trial in the Iosco County Circuit Court. He was sentenced to concurrent terms of 4.5 years to 40 years in prison in 2014. In his pleadings, Petitioner raises claims concerning the joinder of his criminal charges and the effectiveness of trial counsel. Respondent contends that the claims lack merit.  For the reasons set forth, the Court denies the petition for a writ of habeas corpus.

The Court also denies a certificate of appealability and denies Petitioner leave to proceed in forma pauperis on appeal.

## II.    Facts and Procedural History

Petitioner's convictions arise from his delivery of heroin to a confidential informant who was working with officers from the Michigan State Police Strike Team Investigative Narcotics Group (STING). The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, *see* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> A confidential informant agreed to work with Oscoda and STING officers to purchase heroin from defendant following a traffic stop in which the informant was found to be in possession of heroin. The informant testified that he had been a heroin addict for about eight or nine years, and that he had had regular contact with defendant for four to five years. On April 22, 2013 and again on April 24, 2013, STING officers equipped the informant with prerecorded buy money and an audio transmitter. One of the STING officers, Detective Tyler Leslie, testified that he drove the informant to the area of defendant's residence on both dates, and waited for the informant to contact him after the purchases were completed.

> After the sales were completed, the informant met with Detective Leslie and turned over the drugs that he purchased from defendant. The drugs were analyzed and determined to be heroin. Detective Leslie testified that the transmitter failed during the first controlled purchase but the informant told him that he had made

contact with defendant, handed defendant the prerecorded $190 buy money, and, in exchange, defendant handed the informant four packages of heroin.

After the second controlled purchase, which was recorded and played for the jury, the informant told Detective Leslie that he had made contact with defendant's girlfriend, Ashley Weisenstein, who told him that the price for the heroin was $195. The informant told Weisenstein that he had agreed with defendant upon a price of $190. According to the informant, Weisenstein called to defendant in another room of the house and defendant told her that $190 was an acceptable price. Weisenstein disputed this account at trial, and testified that she was alone in the house during the second purchase and that defendant played no role in this delivery of the heroin. However, during an earlier court proceeding in which she tendered a plea to related charges, Weisenstein agreed that she acted on behalf of defendant when she delivered heroin to the informant.

The informant testified that he used heroin every day and had been addicted to it for about eight or nine years. He testified that he had known defendant for four or five years, and that during that time, he had seen defendant "[m]aybe every other day." The informant confirmed that he began working with Detective Leslie as a confidential informant after he was stopped and found to be in possession of heroin. The informant testified that he participated in the two controlled buys; he could not recall which time he gave money to Weisenstein and which time he gave it to defendant. The informant testified that defendant was present for both purchases; however, on the occasion when Weisenstein accepted his money, the informant did not know "exactly where [defendant] was at" or remember whether he had had a

conversation with him. The informant did recall that when he gave the money to Weisenstein, she asked defendant "if $190 was okay, and he said yeah."

Defendant was convicted and sentenced as set forth above . . ..

*People v. Lammi*, No. 321628, 2015 WL 5440233, *1–2 (Mich. Ct. App. Sept. 15, 2015) (unpublished).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising claims concerning the right to present a defense, the admissibility of evidence, joinder, prosecutorial misconduct, ineffective assistance of counsel, and sentencing. The court denied relief on those claims and affirmed Petitioner's convictions and sentences. *Id.* at *3-7. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied because the court was not persuaded to review the questions presented. *People v. Lammi*, 499 Mich. 927, 878 N.W.2d 880 (2016).

Petitioner thereafter filed his federal habeas petition. He raises the following claims:

I.   Fundamental fairness and due process of law prohibit joinder of two distinct and separate charges involving completely different acts on separate days.

II.  Ineffective assistance of trial counsel for failure to file/present an alibi defense.

Respondent has filed an answer to the petition contending that it should be denied.

## III. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions. The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that]

precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). A habeas court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of a claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*; *see also White v. Woodall*, 572 U.S. 415, 419–20 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125–26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71–72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases—indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of "clearly established law" are to be determined solely by Supreme Court precedent. Thus, federal circuit or district court cases do not constitute clearly established Supreme Court law and cannot provide the basis for federal habeas relief. *See Parker v. Matthews*, 567 U.S. 37, 48–49 (2012) (per

curiam); *see also Lopez v. Smith*, 135 S. Ct. 1, 2 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of a state court's decision. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV. Discussion

### A. Joinder of Charges

Petitioner first asserts that he is entitled to habeas relief because the trial court erred in consolidating his charges for trial. Petitioner asserts that because the two offenses took place on separate dates and involved different evidence, the claims were improperly joined. In particular, he states that Ms. Weisenstein was only involved in one of the transactions, only one of the transactions was recorded, there was no visual observation of one of the transactions, and the informant was not supervised or seen

with him (Petitioner) at any time. Respondent contends that this claim is not cognizable and that it lacks merit.

There are no Supreme Court cases holding that a defendant in a criminal case has a constitutional right to a separate trial on each of the charges against him. *See, e.g., Rodriguez v. Jones*, 625 F. Supp. 2d 552, 560–61 (E.D. Mich. 2009). Rather, "consolidation in one lawsuit of all issues arising out of a single transaction or occurrence best promotes justice, economy, and convenience." *Ashe v. Swenson*, 397 U.S. 436, 454 (1970) (Brennan, J., concurring). Joinder "has long been recognized as a constitutionally acceptable accommodation of the defendant's right to a fair trial." *Herring v. Meachum*, 11 F.3d 374, 377 (2d Cir. 1993). On habeas review of state court convictions, the question is not whether the joinder of charges or the refusal to sever counts for separate trials violated a state procedural rule, but whether the petitioner was denied due process of law under the Fourteenth Amendment. *See Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007) (citing *Corbett v. Bordenkircher*, 615 F.2d 722, 724 (6th Cir. 1980)).

The Supreme Court has stated that "[i]mproper joinder does not, in itself, violate the Constitution. Rather, misjoinder [constitutes] a constitutional violation only if it results in prejudice so great as to deny a defendant his . . . right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 n. 8 (1986); *see also Davis*, 475

F.3d at 777 (quoting *Lane*). The United States Court of Appeals for the Sixth Circuit, however, has ruled that *Lane*'s language regarding the failure to sever criminal charges is simply dicta and thus not clearly established federal law that would justify federal habeas relief, *see Mayfield v. Morrow*, 528 F. App'x 538, 541–42 (6th Cir. 2013) (quoting *Williams*, 529 U.S. at 412); *accord Collins v. Runnels*, 603 F.3d 1127, 1132 (9th Cir. 2010). Consequently, Petitioner likely fails to state a cognizable claim for federal habeas relief as to this issue.

In any event, Petitioner fails to establish that the joinder of the two drug charges violated his due process right to a fair trial. Such claims have typically been rejected by the Sixth Circuit even on direct review of federal criminal convictions. The Sixth Circuit has explained that to establish prejudice from joinder, a defendant must point to specific evidence that the joinder was prejudicial and "an unproven assertion is not compelling evidence of actual prejudice." *United States v. Saadey*, 393 F.3d 669, 679 (6th Cir. 2005).

The Michigan Court of Appeals reviewed this issue on direct appeal and denied relief. The court explained:

> [D]efendant contends that the trial court erred in consolidating the cases arising from the two drug transactions. Before trial, the prosecutor filed a motion to consolidate the cases arising from the two deliveries

11

of heroin under MCR 6.120 because the charges were "identical, and the offenses are based on a series of connected acts;" and because the witnesses and venue were the same for both cases. Defendant objected, arguing that the motion was untimely and that it would cause prejudice. The trial court granted the motion to consolidate in the interest of economy and based on its findings that the cases were "related and [involve] pretty much the same witnesses." On appeal, defendant argues that joinder was not proper because the charges were not related under MCR 6.120.

We review a trial court's ultimate decision on joinder of offenses for an abuse of discretion. *People v. Duranseau*, 221 Mich. App. 204, 208; 561 NW2d 111 (1997).

MCR 6.120 governs joinder of offenses charged in multiple informations against a single defendant and it provides in pertinent part as follows:

> [o]n its own initiative, the motion of a party ... the court may join offenses charged in two or more informations or indictments against a single defendant ... when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.

> Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on
> (a) the same conduct or transaction, or
> (b) a series of connected acts, or
> (c) a series of acts constituting parts of a single scheme or plan. [MCR 6.120(B)(1).]

Under MCR 6.120, joinder is permissible when offenses are "related," meaning "they comprise either 'the same

conduct' or 'a series of connected acts or acts constituting part of a single scheme or plan.'" *People v. Williams*, 483 Mich. 226, 233; 769 NW2d 605 (2009), quoting MCR 6.120(B)(1) and (2). Here, the trial court did not abuse its discretion in finding that the charged offenses were related in that they comprised the same conduct, and were arguably a series of connected acts, or acts constituting part of a single scheme or plan. The informant purchased the same amount of heroin from defendant for the same amount of money on two occasions within a short period of time. On both occasions, according to the informant, defendant directed the transactions; defendant told the informant when to come to his residence in order to complete the transaction and fixed or approved the price of the drugs. Defendant's claim that the acts "involved different conduct" is simply not supported by the record.

Defendant argues that joinder was improper because the underlying acts were committed on different days. However, in *Williams*, [Michigan's] Supreme Court explained that "the unambiguous language of MCR 6 .120 does not mandate the existence of temporal proximity between several offenses," but rather "permits joinder of offenses that were not committed at the same time but nevertheless constitute a series of connected acts or acts constituting part of a single scheme or plan." *Williams*, 483 Mich. at 241. Selling the same amount of heroin to the same purchaser for the same price in the same place on two separate occasions within a two-day period can fairly be described as a "single scheme or plan." In short, the court did not abuse its discretion by joining the cases.

*Lammi*, 2015 WL 5440233 at *4–5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or

the facts. Petitioner fails to show that the consolidation of his two drug charges into one trial was so prejudicial that it deprived him of due process. The alleged offenses and charges were sufficiently related so as to be part of a common scheme or plan under state law and consolidating the cases was an efficient use of judicial resources. Even if the charges were severed into separate trials, they would have been cross-admissible at those separate trials as a matter of state law. *See* MICH. R. EVID. 404(b); *People v. Williams*, 483 Mich. 226, 234 (2009).

Additionally, a jury is presumed capable of considering each criminal count separately and any prejudice arising from trial of joined offenses may be cured by limiting instructions. *United States v. Cope*, 312 F.3d 757, 781 (6th Cir. 2002). "Error based on misjoinder is almost always harmless where...the trial court issues a careful limiting instruction to the jury on the issue of possible prejudice resulting from the joinder." *United States v. Cody*, 498 F.3d 582, 587 (6th Cir. 2007). For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict"); *see also Fry v. Pliler*, 551 U.S. 112, 117–18 (2007) (the *Brecht* standard applies in "virtually all" habeas cases); *Ruelas v. Wolfenbarger*, 580 F.3d 403,

411 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in the Sixth Circuit).

In this case, any potential prejudice to Petitioner was mitigated by the fact that the trial court instructed the jury about the proper consideration of the multiple charges and the evidence presented at trial. The trial court instructed the jury that "[t]he defendant is charged with two counts of delivery of less than 50 grams of a mixture containing the controlled substance of heroin. These are separate crimes, and the prosecutor is charging that the defendant committed both of them. You must consider each crime separately in light of all the evidence in the case. You may find the defendant guilty of all or any one of these crimes, or not guilty." 11/08/17 Trial Tr., pp. 29. Jurors are presumed to follow the court's instructions. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors ... take an oath to follow the law as charged, and they are expected to follow it.").

Moreover, the prosecution presented significant evidence of Petitioner's guilt as to both of the charges at trial, including the recovered heroin packets, the lab reports, an audio tape of one transaction, Ashley Weinsenstein's plea statements, and testimony from Detective Tyler Leslie and the informant. Any potential error in consolidating the criminal charges into one trial was harmless.

Petitioner fails to establish a violation of his federal constitutional rights. Habeas relief is not warranted on this claim.

## B.    Effectiveness of Trial Counsel

Petitioner also asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to file and present an alibi defense. Petitioner states that his employer (John Pulda) informed trial counsel that he possessed time cards showing that Petitioner was at work when the offense took place and that he was willing to testify. Counsel did not file notice of the alibi defense, the jury never heard the employer's testimony, and the time cards were never introduced into evidence. Respondent contends that this claim lacks merit.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Id.* at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have

been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

To satisfy the first prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review

due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

That being said, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. When making strategic decisions, counsel's conduct must be reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522–23. The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

Petitioner asserts that the trial counsel was ineffective for failing to file and present the alibi defense. Petitioner provides a copy of a letter written from trial counsel to appellate counsel regarding the alibi defense. The letter states that the supposed alibi defense was brought to trial counsel's attention well after the circuit court arraignment and after Petitioner had information as

to the dates of the offenses. It states that counsel recalled speaking with Petitioner about the alibi and explains why the alibi defense could not be pursued. The letter also indicates that counsel had ethical concerns regarding the alibi defense. *See* 7/14/14 letter from Keith E. Moir to F. Randall Karfonta.

The Michigan Court of Appeals considered this claim on direct appeal and denied relief. The court explained in relevant part:

> Although trial counsel did not articulate in his letter to appellate counsel the explanation he gave to defendant as to "why we could not pursue an alibi defense," counsel did state that he had "ethical concerns" about it. The circumstances surrounding trial counsel's handling of Pulda support that counsel adequately investigated the potential witness before making a strategic decision not to call Pulda as a witness. There is nothing to support that counsel acted deficiently in making this decision and we will not second-guess the decision on appeal. *See People v. Dixon*, 263 Mich App 393, 398, 688 NW2d 308 (2004) (quotation marks and citations omitted) ("Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, which we will not second-guess with the benefit of hindsight."). In short, defendant was not denied the effective assistance of counsel.

*Lammi*, 2015 WL 5440233 at *7.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The record indicates that counsel's performance was not

deficient. Counsel was aware of the alibi defense, investigated that defense, and had legitimate reasons not to present the defense. In particular, counsel chose not to present the alibi defense because the alibi was brought to his attention after the circuit court arraignment and, after Petitioner had information as to the dates of the offenses and because he had ethical concerns about the veracity of the alibi and legitimacy of the defense.

Counsel's decision not to call Petitioner's employer as an alibi witness due to concerns about timing and credibility was reasonable under the circumstances. *See, e.g., Stadler v. Berghuis*, 483 F. App'x 173, 176–77 (6th Cir. 2012) (counsel's decision not to pursue an alibi defense was reasonable given concerns about family members' credibility). Counsel may have also believed that contesting the prosecution's case and casting doubt on the credibility of prosecution's primary witness, who was a drug addict, would be more effective than presenting an alibi defense which could be subject to significant challenge. *See, e.g., Hale v. Davis*, 512 F. App'x 516, 522 (6th Cir. 2013) (stating that sometimes it may be "better to try to cast pervasive suspicion of doubt" by challenging the prosecution's case than to "strive to prove a certainty that exonerates"). The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (an ineffective

assistance of counsel claim "cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken"). Petitioner fails to establish that counsel's performance was deficient.

Because both prongs of the *Strickland* test must be satisfied to establish ineffective assistance, it is unnecessary to consider the second prong. Nonetheless, the Court finds that Petitioner cannot establish that he was prejudiced by counsel's conduct. As previously discussed, the prosecution presented significant evidence of Petitioner's guilt at trial, including the recovered heroin packets, the lab reports, an audio tape, Ashley Weisenstein's plea statements, and testimony from Detective Tyler Leslie and the informant. Given such evidence and testimony, there is no reasonable probability that the outcome would have been different had the alibi defense been presented at trial. Petitioner fails to establish that trial counsel erred or that he was prejudiced by counsel's conduct. He also fails to establish that he was deprived of a substantial defense or a fundamentally fair trial. Habeas relief is not warranted on this claim.

## V.    Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims.

Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Petitioner makes no such showing. Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court **DENIES** Petitioner leave to proceed in forma pauperis on appeal as an appeal from the Court's decision cannot be taken in good faith. *See* FED. R. APP. P. 24(a).

**IT IS SO ORDERED**.

Dated: March 29, 2019     s/Terrence G. Berg
                          TERRENCE G. BERG
                          UNITED STATES DISTRICT JUDGE